DEC 26 2001
ISSUED

IN THE UNITED STATES DISTRICT COURT FILED

FOR THE NORTHERN DISTRICT OF OHIO DEC 26  PM 3: 03

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

Kenneth S. Taylor )
8610 Hadden Road )
Twinsburg, OH 44087 )
  Plaintiff )
                     )
  -VS- )
                      )
Royal Chemical Co. LTD. )
8679 Freeway Drive )
Macedonia OH 44056 )
1535 and DOES )
  Defendant(s) )
                      )
                      )

# 5:01CV2893

CASE NO._____

JUDGE __ **JUDGE OLIVER**

**MAG. JUDGE PERELMAN**

COMPLAINT

Plaintiff Kenneth S. Taylor alleges as follows:

The Parties

1.) Plaintiff, Kenneth S. Taylor is a born naturalized citizen of the United States who is married with four children, resides at 8610 Hadden Road, Twinsburg Ohio 44087, who is also an individual person.

2.) Defendant Royal Chemical company LTD., 8679 Freeway Ave., Macedonia Ohio 44056-1535 is a corporation incorporated under state laws of Ohio,

Having it's principal place of business in the state of Ohio who's president is Daniel Zelman.

3.) The action arises under the constitution of the United States Article 5 (1) Section 1 the XIV amendment to the constitution of the United States. Section 1991, 1981, 42 USC § 2000 c title VII Discrimination. The Civil Rights Act of 1964 as amended title VII and under reconstruction era Civil Rights Act of 1866,1871 the treaties of the United States, here as describes the here in after more fully appears.

4.) The action arises under civil rights act of 1964 as amended title VII 42 USC §2000c title VII as here in after more fully appears. Recognizing this to be the court of competent jurisdiction.

5.) Having previously filled charges against the defendant with the E.E.O.C. as a matter of law under Title VII, and only after receiving a notice of rights to sue from E.E.O.C. dated September 26, 2001, I bring forth in this complaint allegations of discrimination, retaliation, harassment force to work in racial hostile environment and wrongful discharge, all causes of action directly related to retaliatory change in shift.

6.) The defendant acted with malicious intent to cause harm to plaintiff, and did so to the plaintiff who is in a protect class as an employee, established in the VII civil rights act of 1964 as amended.

7.) The defendant has established a long history and pattern of discrimination, harassment, and civil rights violations in its workplace; we will bring forth evidence supporting the pattern.

8.) I preface this complaint by making judges that court The Court and its fact findings ERS aware of the mountains of evidence which supports plaintiff's claim of reckless violations of the statutes by defendant under Title VII of the Civil Rights Act of 1964 as amended.

9.) Investigations of charges brought against defendant by plaintiff currently on file with the E.E.O.C. establishes the defendant has complete disregard for Civil Rights of Plaintiff.

10.) The E.E.O.C has found just cause in favor of plaintiff in three (3) other cases. The cases and charge no.# are as follows.(1) Kenneth S. Taylor vs. Royal Chemical #220A10872 unlawful discharge because of race, black, in retaliation for filling previous charge 10/2/01. (2.) Kenneth Taylor vs. Royal chemical #220A01184 subjected to racial hostile environment and being disciplined in retaliation for engaging in protected activity 6/7/01. (3.) Kenneth Taylor vs. Royal Chemical #220A00762 harassment subjected to different terms of employment denied promotions because of my race, black.

11.) In all three(3) above mentioned charges E.E.O.C. has issued plaintiff letters of determination and based on their evidence obtained and investigation all burden of proof has been met and establishes status ES have

been violated under title VII Civil Rights Act of 1964 as amended, by above fore mentioned defendant copies of determination letter enclosed.

12.) On August 15, 2000 I was approached in the parking lot by Joe Nemikus only minutes after picking up my pay check as I was returning to my vehicle Joe riding lift truck parks it and ask me if I wanted to work on the day shift, surprised by this offer I replied why me? He said he needed good hard working people on day shift.

13.) On August 21st Monday 2000 I began working on day shift, I was immediately placed on mixer #3 where all blacks worked during my tenure, where most toxic chemicals were produced, and the greatest hazard for injury was. This area of the plant mixer #3 was known, and called The black mixer or the ghetto.

14.) The fact of the matter is from day one, I was separated from white workers, white workers were warned that I was a problem, Derrick Crosby told me whites were afraid to work with me "they had a meeting and said you're crazy and sensitive to racial issues they like me I am cool with them you're a problem."

15.) I was treated like a total outcast the hostility the white workers had for me was apparent on October 18, 2000, while eating lunch, wings and pizza provided by company, shortly after ISO inspection John Koduru came in the lunch room (Darius, a black employee, and Don also present)John Koduru

asks me how are you doing on day shift? I replied not so well, John Koduru replied "you should be doing much better now that you have more of your brothers to work with."

16.)    On October 24, 2000, I was given approval to leave work early by Joe Nemikus Himself, I showed him my court appointment slip he said o.k. The next day, October 25, 2000 Joe Nemikus wrote me up for leaving early. White employee Dan leaves early for accounting classes, even when his assignments are not finished, I've seen whites just walk out of the plant upset, and never written up for early leave. He also threatened me saying if I'm one minute late for the next seven (7) month period or until May 10th 2001 I would be terminated. I was harassed threatened in the upstairs office next to the ~~last~~ Label room for over 2 hours.

17.)    On day shift I was subjected to racial jokes about radio stations. On day shift Mike told me not to touch the company radio or change to black stations the radio was to remain on Howard Stern who constantly talked about blacks. The radio was loud and audible in my immediate work area Derrick Crosby, black, would sometimes change the station, Mike would say let me fix the radio because it is broken when black station plays, Mike and other whites became so angry at Derrick they stenciled on the rear wall "Derrick don't touch the radio, you suck", this was a message to blacks not to change the stations. The noose still remained hanging up near mixer II on day shift. I

commented to Vince, black mixer, about the noose hanging near the work space Vince said Mark stump had a confederate flag hanging up there. Mark Stump was my immediate supervisor on ~~day~~ Night shift. On day shift I was being harassed by Jim a temporary employee. I told my immediate supervisor several times he did nothing at all; he made several racial comments, slurs, and jokes on Jan 11, 2001.

18.) On day shift Racial Graffiti was on the walls in the men's room upstairs and remained constant and was still on the walls when I was terminated. Racial graffiti on men's room wall in rear warehouse shipping and receiving area. A wooden table at rear warehouse had "Nigger and a Swastika" carved into it someone moved that small 4 leg table. Swastikas was on the wall near the drum line. The company has no blacks in management or supervisor position during my employment there. As a matter of fact the company just does not promote blacks.

19.) In a meeting on Tuesday, July 18 between Mr. John Koduru (vice president of safety and technical services) and Mark Stump (supervisor) and John Uransek(personnel director) promised me training and advancement and assured me no more retaliation; they broke their verbal and written agreement there by committing fraud, and breaching their contractual agreement to me. They told coworkers and others I filed a lawsuit against them which is liable and slandering.

20.) On Dec 2000 John Uransek, Jim Lockey became frustrated because they were unable to collect a document required by OSHA from employees, before receiving bonus checks, I became a victim of malicious, relentless harassment for not participating in their scheme to defraud OSHA on medical evaluations. Jim Lockey threatened my job, said he got to have that form or else. He reported me to John Uransek who harasses me in his office concerning forms from OSHA (Appendix C to 1910.134: OSHA Respirator medical evaluation questionnaire (mandatory)). The company had for~~gotten~~ Forged this documentation in 1999 and harassed me for complaining about nose bleeds. The company has been cited for OSHA violations in the past, and continue to use employees to defraud OSHA.

21.) On Dec 6, 2000 I requested review of my employee file alone, John never allowed me to view my file alone, he never released my file for review instead he flipped through pages holding the file in his hand and harassed me and rushed me through the documents. I did see one sided slanderous complaints against me in my files, on this same date I requested my pay raise due on November 30, 2000 that I failed to receive.

22.) On December 6, 2000 while waiting in reception area of the office to see John Uransek to review my personal file, Galye Milataski the plant manager who is also a white woman comes in and begins to massage my shoulders

and ask me if I was Okay. It's my belief that she could see the harassment from management and coworkers had taken a toll on me.

23.) On day shift I learned of how bad the racial hostility was for me as well as other blacks. Five year employee Alonzo Render, who is a black male that worked with me on mixer #3, said Tom Virbrant called him a nigger and other racial slurs. Ben King said he was the victim of racism and shift change, Alonzo Render said he was a victim of racism and shift change. Derrick Crosby From mixer #3 said he was a victim, Tom an older black employee who worked for the company for 40 years told me the personnel director, John Uransek, was one of the worst racists he had ever seen. He said he would refer to all blacks as black sambos, Donald Robinson of mixer #3 said Mark Stump admitted to him that he was a racist. I saw Gerald Bionger, another black man, physically harassed by management.

24.) Understanding title VII was not intended to bring civility to the workplace, it is the plaintiff's belief that the defendants have acted with malicious intent to do harm and did so repeatedly and knowingly they were in violation of status. As head supervisor of day and night shift (Joe Nemikus) commented to the plaintiff once "no one tells us what to do here at Royal chemical".

25.) It is my belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or "good faith" argument and it is not

interposed for any improper purpose such as to harass or cause unnecessary delay or needless increase in the cost of litigation.

FIRST CAUSE OF ACTION

PROHIBITED DISCIPLINARY OR RETALIATORY ACTION

26.) Plaintiffs reallege each allegation contained in paragraphs 1 through 25, as if fully set forth.

27.) As alleged in paragraph 12,I was being transferred to day shift with the intent of the defendant to further harass plaintiff into quitting, further defendant assigned plaintiff to a less desirable position as alleged in paragraph 13 when moved to the most dangerous area of plant, further suffered reduction in pay.

28.) As alleged in paragraph 2, plaintiff was with held salary increase to which plaintiff was entitled to other wise.

29.) As alleged in paragraph 19 plaintiff was denied promotional and training opportunities, all done with hatred and ill will toward plaintiff in violation with of civil rights act of 1964 as amended title VII and section 1981 of civil rights act. Thereby entitling plaintiff to award of back pay, cost, attorney fees, benefits, tort damages (pain and suffering, emotional distress), punitive and exemplary damages.

SECOND CAUSE OF ACTION

RACIAL HARASSMENT

30.) As alleged in paragraph 13 and 14 the defendant created a racial hostile environment prior to plaintiffs arrival on day shift by informing co-workers in a meeting that I was racially sensitive and not some one co-workers wanted to work with further. The defendant engaged in racial discrimination by having the plaintiff work with black workers, and defendant conspired to keep plaintiff away from white workers, In paragraph 15, the statement from John Koduru "you should be doing better now that you have more of your brothers to work with," shows the racial discrimination was intended and directly linked to the shift change.

31.) As alleged in paragraph 17 plaintiff was subjected to racial jokes and comments plaintiff was force to listen to derogatory jokes about blacks on radio stations by Howard Stern. Plaintiff further alleged in paragraph 17 no black stations were allowed to play. Plaintiff further alleges management did absolutely nothing to resolve racial prejudice about the radio and was fully aware of the problem. And stenciled writing on tool cabinet warning black male Derrick Crosby not to touch the radio was allowed to stay there written, and supervisor Joe Nemikus who open locker and replenishes supplies daily knowingly left it there.

32.) A noose that hangs from the ceiling of factory on mixer #2 is despicable and egregious. Vince a black mixer on day shift told the plaintiff this is the same area where Mark Stump hung his confederate flag.

33.) Plaintiff was subjected to racial graffiti on the bathroom walls, on plaintiff's locker, racism markings on the work room walls, racial markings carved into small wooden table in warehouse as alleged in paragraph 18.

34.) As alleged in paragraph 18 the company has no blacks in management and no black supervisor.

35.) A temporary employee named Jim harassed the plaintiff by making racial slurs, comments, and jokes. The plaintiff reported both verbally and in writing to Joe Nemikus and management and nothing was done.

36.) As alleged in paragraph 23 mixer #3 intended by management to be all black and an area where blacks work, did contribute to creating a racial hostile work environment, this area was known as the ghetto or the black mixer.

37.) As alleged by plaintiff I learned of the racial hostile environment created and allowed to exist by defendant, I worked with all blacks on mixer #3 ( Alonzo Render (a black male from mixer #3), Derrick Crosby(a black male from mixer#3), Kenneth Taylor (a black male from mixer #3), and Old man Tom (another black male from mixer #3).

38.) As alleged in paragraph 13 this mixer is where the heaviest work load is the most dangerous work area the most toxic chemicals are produced the greatest chance of personal injuries occur, and workers complain of falling health at mixer #3, the Black Mixer.

39.) In paragraphs 30 through 38 the Plaintiff alleges that the defendant's actions shows racially hostile environment exists, and that employer tolerated, and in most instances condoned the situation, or should have known of alleged conduct and failed to take prompt remedial action. There by violating the plaintiff's civil rights under title VII, thereby entitling the plaintiff to the award of punitive and exemplary damages according to proof.

THIRD CAUSE OF ACTION

DISPARTE TREATMENT

40.) Plaintiff re alleges that in paragraph 16 the plaintiff was given permission by the head supervisor Joe Nemikus to leave early on October 24 for an appointment at 2:45 from the justice system and also showed him my appointment slip and was granted permission to leave early by Joe Nemikus.

41.) On the very next day October 25, 2000 he wrote me up for early leave, harassed me in his office, threatened to terminate , Intentionally humiliated me, told me if I am one minute late for the next 7 month period he would terminate me. White employee Dan leaves early twice per week to attend accounting classes. The plaintiff will bring written documents and appointment slip to court to offer as proof.

42.) The defendant acted in a malicious and egregious manner and intended to discriminate and discipline unfairly in the face of a perceived risk, with complete disregard for the plaintiff's civil rights, this kind of underhanded

action is not only despicable but is an illegal act under Title VII and the FEPA, thereby entitling the plaintiff to the award of punitive and exemplary damages according to proof.

### FOURTH CUASE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

43.)  Plaintiff alleges in paragraph 20 John Uransek, Jim Lockey resorted to extreme measures to collect a fraudulent document from plaintiff threatening to terminate me for not participating in defrauding the OSHA medical evaluation in 2000 in 1999 defendant did forge documents, this document was directly related to health and safety issues.  Plaintiff was having nose bleed problems, the company tried to cover up through this document plaintiff was being harmed physically, the defendant demonstrated hatred, ill will, fraud, and malice.  Further the defendant caused emotional distress in paragraph 16 with a spirit of revenge, using trickery and a wanton disregard for plaintiff's rights.  Defendant did set up a trap for unwariness of plaintiff by giving plaintiff permission to leave early one day and the next day using the incident to threaten termination of the plaintiff.  As a result of combined action by defendant plaintiff suffered loss of consortium as well as severe emotional stress, hurt feelings, and shame in amount to be proved at trial.

### FIFTHE CAUSE OF ACTION

### FRAUD

44.) Plaintiff re-alleged in paragraph 19 during a meeting between John Koduru, John Uransek, Mark Stump, and Plaintiff they promised plaintiff training advancement and assured plaintiff no retaliation would occur, defendant breached this verbal and written contract. The plaintiff received no training, no advancement, and retaliation continued further during a meeting held by management Daniel Zelman present, assured me the company was on sound financial ground and as an incentive to stay said in the meeting this was a permanent position and they never had to lay off people, also John Uransek promised to meet with me concerning any problems, he breached this promise we will bring forth correspondence supporting these allegations. The defendant made false statements as to length of employment, thereby violating the statues, civil rights act section 1981, also title VII, thereby the plaintiff is entitled to award for punitive and compensatory damages according to proof.

WHEREFORE, Plaintiffs pray for judgment against defendants as follows:

FOR THE FIRST CAUSE OF ACTION plaintiffs pray for judgment against defendant as follows:

    a. actual damages;

    b. punitive damages;

    c. cost of suit, including attorney fees;

    d. back pay;

    e.  front pay;

    f.  compensatory damages;

FOR THE SECOND CAUSE OF ACTION plaintiff pray for judgment against defendant as follows:

    a.  back pay;

    b.  front pay;

    c.  punitive damages;

    d.  compensatory damages;

    e.  legal fees;

FOR THIRD CAUSE OF ACTION plaintiff pray for judgment against defendant as follows:

    a.  punitive;

    b.  front pay;

    c.  back pay;

    d.  compensatory damages;

    e.  legal fees;

FOR FOURTH CAUSE OF ACTION plaintiff pray for judgment against defendant as follows:

    a.  back pay;

    b.  front pay;

    c.  punitive damages;

d. compensatory;

e. liquidated damages;

f. legal fees;

FOR THE FIFTH CAUSE OF ACTION plaintiff pray for judgment against defendant as follows:

a. compensatory damages;

b. legal fees;

c. punitive damages;

d. actual loss;

e. exemplary damages;

X _____

Kenneth S. Taylor   KENNETH S TAYLOR

8610 Hadden Rd., Twinsburg, OH 44108   8610 HADDEN RD TWINSBURG, OHIO 44087
ADDRESS

12/26/01
DATE